**REPRODUCTIVE HEALTH SERVICES OF PLANNED PARENTHOOD OF THE ST. LOUIS REGION, INC., et al., Plaintiffs,**

v.

**Jeremiah W. NIXON, et al., Defendants.**

**No. 99–04231–CV–C–SOW.**

United States District Court, W.D. Missouri, Central Division.

July 9, 2004.

Arthur A. Benson, Jamie Kathryn Lansford, Arthur Benson & Associates, Curtis E. Woods, Sonnenschein, Nath & Rosenthal, Lana Michelle Knedlik, Stinson, Morrison & Hecker LLP, Kansas City, MO, Dara Klassel, New York, NY, for Plaintiffs.

Michael Pritchett, Missouri Attorney General, Jefferson City, MO, for Defendants.

### ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court is plaintiffs' Motion for Summary Judgment (Doc. # 84), which is fully briefed. Plaintiffs' motion requires this Court to assess the constitutionality of the Missouri Infant's Protection Act, Mo. Rev.Stat. § 565.300 (WESTLAW through 2004 legislation). The United States Supreme Court's decision in *Stenberg v. Carhart*, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000), compels the conclusion that the Missouri Infant's Protection Act violates the United States Constitution. Accordingly, this Court grants plaintiffs' Motion for Summary Judgment.

### I. Background

The Missouri Infant's Protection Act creates the Class A felony of infanticide, which is defined as causing the "death of a living infant with the purpose to cause said death by an overt act performed when the

infant is partially born or born." Mo.Rev. Stat. § 565.300.3 (WESTLAW through 2004 legislation). The Act defines "living infant" as "a human child, born or partially born, who is alive, as determined in accordance with the usual and customary standards of medical practice and is not dead ... and has not attained the age of thirty days post birth [.]" *Id.* § 565.300.2(2) (citation omitted). It further defines "partially born" as "partial separation of a child from the mother with the child's head intact with the torso. If vaginally delivered, a child is partially separated from the mother when the head in a cephalic presentation, or any part of the torso above the navel in a breech presentation, is outside the mother's external cervical os. If delivered abdominally, a child is partially separated from the mother when the child's head in a cephalic presentation, or any part of the torso above the navel in a breech presentation, is outside the mother's external abdominal wall." *Id.* § 565.300.2(3). Finally, the Act defines "born" as "complete separation of an intact child from the mother regardless of whether the umbilical cord is cut or the placenta detached[.]" *Id.* § 565.300.2(1).

Of particular relevance to this lawsuit is Section 565.300.5 of the Act, which reads: "A physician using procedures consistent with the usual and customary standards of medical practice to save the life of the mother during pregnancy or birth or to save the life of any unborn or partially born child of the same pregnancy shall not be criminally responsible under this section." *Id.* § 565.300.5. It is undisputed that the Act does not contain a health exception. *Stenberg,* 530 U.S. at 930, 120 S.Ct. 2597 (Nebraska statute unconstitutional because statute "lacks any exception for the preservation of the ... health of the mother."); *see also State of Missouri v. Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc., et al.,* 97 S.W.3d 54, 63–65 (Mo.

Ct.App.2002) ("[W]e find nothing in either the language of the Act or its limited legislative history that supports the view that the Act provides an exception to liability for actions undertaken to preserve the health of the mother.").

On September 17, 1999, Reproductive Health Services of Planned Parenthood of the St. Louis Region and Dr. Robert Crist, M.D., commenced this action seeking declaratory and injunctive relief. Missouri Attorney General Jeremiah W. Nixon and St. Louis Circuit Attorney Dee Joyce-Hayes, both sued in their official capacities, were named as defendants. A temporary restraining order enjoining the Act was entered by this Court on the day the lawsuit was commenced. Four days later, this Court, pursuant to the agreement of the parties, set this case for trial on March 27, 2000, and extended the temporary restraining order until final disposition on the merits.

On January 5, 2000, the State of Missouri filed a lawsuit in the Circuit Court for the City of St. Louis against plaintiffs seeking a declaration as to the scope and meaning of the Act. On January 21, 2000, this Court enjoined the state proceeding and refused to abstain from exercising federal jurisdiction. Soon after, the State appealed this Court's ruling to the United States Court of Appeals for the Eighth Circuit. On March 23, 2000, the United States Court of Appeals for the Eighth Circuit stayed the proceedings in this Court and allowed the state proceedings to move forward.

The Honorable Robert H. Dierker tried the state lawsuit in a series of hearings commencing May 24, 2000, and concluding on August 17, 2000. On December 5, 2000, Judge Dierker issued a declaration as to the scope and meaning of the Act. *State of Missouri v. Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc., et al.,* No. 004–00008 (Mo.Cir.

Ct., 22nd Cir., Dec. 5, 2000). Specifically, Judge Dierker ruled that the Act did not apply to the following abortion procedures: suction curettage or vacuum aspiration, induction, hysterectomy, hysterectomy, and dismemberment or nonintact dilation (dilatation) and evacuation ("D & E"). *Id.* at 52. Judge Dierker also ruled that the Act did apply to the intact D & E abortion procedure and a variation of the intact D & E abortion procedure known as intact dilation (dilatation) and extraction ("D & X").[1] *Id.* Moreover, Judge Dierker held that a health exception could be read into the act, although a health exception could not be found explicitly in the text of the Act. *Id.* at 53.

Judge Dierker's ruling was appealed to the Missouri Court of Appeals for the Eastern District of Missouri. On November 19, 2002, the Missouri Court of Appeals reversed the part of the judgment that read a health exception into the Act and also modified the judgment to change the mens rea requirement. *State of Missouri v. Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc., et al.,* 97 S.W.3d 54, 63–65 (Mo. Ct.App.2002). Pursuant to the Opinion of the Missouri Court of Appeals, the following abortion procedures are banned by the Act:

> [I]ntact dilation (dilatation) and evacuation abortion procedure[s] (intact D & E), including the procedure known as an intact dilation (dilatation) and extraction abortion procedure (D & X), performed by a licensed physician, including defendant Crist, *if and only if, prior to performing the abortion the physician plans and has a purpose to perform and*

*in fact purposely performs the following acts:* (a) serial administration of osmotic dilators (laminaria) over a period exceeding 24 hours; (b) manipulation of the position of the fetus *in utero* to ensure a footling breech delivery; (c) partial or complete separation of a living fetus from the mother with the child's head intact with the torso-if vaginally delivered, a 'fetus is partially separated from the mother when the head in a cephalic presentation, or any part of the torso above the navel in a breech presentation, is outside the mother's external cervical os; if delivered abdominally, a fetus is partially separated from the mother when the child's head in a cephalic presentation, or any part of the torso above the navel in a breech presentation, is outside the mother's external abdominal wall; and (d) intentional physical application of force, either by instrument or suction, to the body of the fetus itself, for the purpose of causing, and actually causing, cessation of circulation or respiration or both at or after complete or partial separation (as defined herein) of the living fetus from the mother.[2]

*Id.* at 63, 64.

On July 24, 2003, the United States Court of Appeals for the Eighth Circuit issued its mandate lifting the stay of the proceedings in this Court. Plaintiffs' Motion for Summary Judgment is fully briefed, and, consequently, this case is ripe for review.

## II. Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropri-

---

**1.** For a description of these abortion procedures, *see Stenberg,* 530 U.S. at 924–929, 120 S.Ct. 2597.

**2.** The underlined portion is the modification made by the Missouri Court of Appeals as to

the mens rea requirement. The language contained in Judge Dierker's Order is the following: "if and only if the physician intends to perform and in fact intentionally performs the following acts ...." *State of Missouri,* No. 004–00008 at 52.

ate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden is on the moving party to establish the absence of a genuine issue of material fact. *Dush v. Appleton Elec. Co.,* 124 F.3d 957, 963 (8th Cir.1997). "Once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial." *Donovan v. Harrah's Maryland Heights Corp.,* 289 F.3d 527, 529 (8th Cir.2002).

### III. Analysis

Plaintiffs argue that pursuant to the United States Supreme Court's decision in *Stenberg v. Carhart,* 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000), this Court must conclude that the Missouri Infant's Protection Act is unconstitutional because it "makes no exception for situations where the banned procedure is the most appropriate procedure to preserve the health of the pregnant woman." *Plaintiffs' Suggestions in Support* at 8.

At issue in *Stenberg* was a Nebraska statute that prohibited "partial birth abortion" except where "necessary to save the life of the mother...." *Id.* at 921, 120 S.Ct. 2597. Similar to the Missouri Infant's Protection Act, the Nebraska statute banned certain intact D & E procedures, including the D & X procedure.[3] *Id.* at 926–30, 120 S.Ct. 2597. The Supreme Court specifically found that a health exception was necessary because "substantial medical authority supports the proposi-

tion" that banning these abortion procedures could endanger women's health. *Id.* at 937–38, 120 S.Ct. 2597. Thus, "a statute that altogether forbids D & X creates a significant health risk. The statute consequently must contain a health exception." *Id.* at 938, 120 S.Ct. 2597; *see also Planned Parenthood v. Owens,* 287 F.3d 910, 917–918 (10th Cir.2002) ("*Stenberg* also confirmed that the lack of a health exception is a sufficient ground for invalidating a state abortion statute."); *Richmond Medical Center for Women v. Gilmore,* 219 F.3d 376, 377 (4th Cir.2000) ("The Court has ... unequivocally held that any ban on partial-birth abortion must include an exception for the health of the mother in order to be constitutional."); *Planned Parenthood v. Farmer,* 220 F.3d 127, 152–153 (3rd Cir.2000) (Alito, J., concurring) (District Court must be affirmed because "the New Jersey statute, like its Nebraska counterpart, lacks an exception for the preservation of the health of the mother. Without such an exception, the New Jersey statute is irreconcilable with Part II–A of *Carhart.*"). Because the Nebraska statute included only a life exception, and "lack[ed] any exception for the preservation of the ... health of the mother," the Court held the statute unconstitutional.[4] *Id.*

The Missouri Court of Appeals' Opinion makes it clear that the Missouri Infant's Protection Act bans the D & X abortion procedure. The Opinion also makes it clear that the Missouri Infant's Protection Act fails to contain an exception to protect the health of the pregnant woman. Because there are no genuine issues of mate-

---

3. The Supreme Court stated that the terms intact D & E and D & X are sufficiently similar so that the terms can be used interchangeably. *Stenberg,* 530 U.S. at 928, 120 S.Ct. 2597.

4. The Supreme Court also held that the Nebraska statute was unconstitutional because it imposed "an undue burden on a woman's ability to choose a D & E abortion, thereby unduly burdening the right to choose abortion itself." *Stenberg,* 530 U.S. at 930, 120 S.Ct. 2597.

rial fact as to the presence of a health exception, this Court, pursuant to *Stenberg v. Carhart,* must conclude that the Missouri Infant's Protection Act is unconstitutional.

## IV. Conclusion

Based on the foregoing, it is hereby

ORDERED that plaintiff's Motion for Summary Judgment (Doc. # 84) is granted. It is further

ORDERED that defendants, and their employees, agents, and successors, are PERMANENTLY ENJOINED from enforcing the Missouri Infant's Protection Act, Mo.Rev.Stat. § 565.300 (WESTLAW through 2004 legislation).